# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ROBERT JENSEN SCHWANDER,

      Defendant-Appellant.

UNPUBLISHED
July 21, 2015

No. 320768
Grand Traverse Circuit Court
LC No. 2011-011239-FC

---

Before: GLEICHER, P.J., and K. F. KELLY and SERVITTO, JJ.

K. F. KELLY, J. (*dissenting*).

I respectfully dissent because I disagree with the majority's conclusion that the resentencing court failed to articulate legally cognizable grounds justifying the extent of the departure.

I am mindful of the comments my esteemed colleague made in his dissenting opinion in *People v Schwander*, unpublished opinion of the Court of Appeals, issued January 31, 2013 (Docket No. 307921):

> After review of the record, it appears to me that the trial court adequately explained why substantial and compelling reasons justified the extent of departure imposed. I note, and infer from what the trial court articulated that:
>
> • the evidence supported a first-degree murder conviction which would have resulted in a mandatory sentence of life imprisonment;
>
> • defendant's prior relationship with the victim and her family was an aggravating circumstance because he may have killed the victim in retaliation for being asked to move from the victim's mother's house where he had been living after being homeless;
>
> • defendant's claim that his actions against the victim were in response to a "combative situation" was incredible in light of the relative size difference, his obvious animus toward the victim, and the numerous, bleeding stab wounds that the victim suffered;

• defendant took several conscious and concerted actions to conceal the murder, mislead police, and avoid detection, including: (1) stripping the victim naked and burning her clothes, (2) giving away her personal effects, (3) burying, then moving and reburying her body in a more discreet location, (4) sending the victim fake, but discoverable messages, (5) repeatedly denying any knowledge of the victim's whereabouts to her family and friends, as well as police, and (6) joining in the search for the victim with the expressed, yet false, hope of her return;

• defendant had a significant amount of time to assist the victim after he stabbed her numerous times, before she died from her wounds, but did nothing to help her;

• because of the nature of the victim's wounds, her struggle to breathe and her need for assistance would have been plainly obvious to defendant, but he ignored her and let her slowly die which illustrates significant depravity;

• even if defendant's claim that he strangled the victim to death was true, he would have had to strangle her for a significant period of time, even after she lost consciousness, for death to result which illustrates significant depravity; and

• the murder and defendant's actions after the murder were particularly heinous considering the fact that the victim's family had provided defendant a home when he was homeless. [*Id.* at slip op pp 2-3 (Cavanagh, J., dissenting).]

On remand, and armed with Judge Cavanagh's dissent, Judge Rodgers acknowledged that the sentence was a substantial departure from the guidelines. However, unlike Judge Power, who only offered two reasons for departure from the guidelines that this Court found acceptable, Judge Rodgers offered a lengthy list and explanation of his reasons for departure on the record, including: 1) the depravity of the murder and the length of time it took for the victim to die, and the fact that prompt medical attention likely would have saved the victim's life; 2) the "gross abuse" of the trust of the victim's family, which housed defendant for a time and provided him with food and shelter; 3) the fact that defendant did not show remorse for the murder and "in fact blame[d] the victim in part for her own death [by] calling her the aggressor despite [their] obvious physical difference in size and strength;" 4) the twelve day search for the victim after she was reported missing, which gave rise to fear in the community;[1] and 5) defendant's "complete and utter disrespect" in his treatment of the victim's body following her death.

---

[1] The majority concludes that "community reaction to a crime is not an *objective* benchmark of the nature of the offense or the character or the offender" and that "[t]he community's condemnation is subsumed in its verdict." But the resentencing court did not enhance the punishment based on community outrage; rather, the resentencing court focused on the fear that the community suffered from not knowing where the victim was or what may have happened to her. However, for the most part, the majority concedes that there were several aspects of the crime that justified an upward departure.

In our prior opinion, we stated that "mathematical specificity or precise words" were not required to explain the extent of a departure by the prevailing case law. *Schwander*, slip op p 4. Rather, *Smith* requires "'an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been.'" *Id*. In reinstating defendant's original sentence Judge Rodgers added that he "trust[ed] the magnitude of the departure has now been fully explained and that justice has been done . . ." Given his thorough understanding of the record before him, Judge Rodgers imposed a sentence that was more proportionate to the offense and the offender than one within the recommended guidelines range. Judge Rodgers supplied reasons that more than adequately supported, not only a departure from the sentencing guidelines, but the extent of the departure.

I would affirm.

/s/ Kirsten Frank Kelly